Mr. Chief Justice Shaukey
delivered the opinion of the court.
Bryant, the plaintiff in error, was indicted in the circuit court of Wilkinson county, at November term,. 1833, for practising medicine without a license.
To the indictment, he pleaded that he was authorised so to practise by virtue of a patent issued by the proper department of the Federal Government, to one Samuel Thompson, under whom the plaintiff claims by transfer, or as having a special authority to use the invention. The privilege secured to the patentee and his assigns, is that of using, compounding, mixing, preparing and administering, certain medicines according to the schedule attached to the patent, which is commonly denominated the “ Thompsonian System.” There was a demurrer to the plea, and various causes assigned, which was sustained by the circuit court.
We are precluded from any inquiry as to the merits of the plea, by ah interposing question which goes directly to the foundation of the indictment, and that is, was the act stated as the offence, a violation of an existing law of the state? The act of 1819, incorporated into the Revised. Code, 416, provided for the appointment of a board of medical censors, who were authorised and required to decide on the qualifications of applicants, for license to practise medicine, and to grant such license to those who might be qualified. The first act was found to be imperfect, and séveral amendments were subsequently passed, by which it was made an indictable offence; subjecting the offender to heavy penalties, to practise medicine without a license. Under these provisions, the plaintiff in error was indicted, at a period subsequent to the adoption of the revised constitution: we must necessarily determine how far these several laws are in confliction with the constitution, and consequently inoperative. There is but *356 one feature in the law, that tends to place it in conflict with the paramount authority of the revised constitution, and that arises from the tenure of office conferred on the members of the board. They went into office by appointment by the governor and were to hold during good behaviour, and had power to fill vacancies. The mode of appointment, and their holding during good beha-viour, and the object of the appointment being to carry into effect a general law of the state, go very far to show that they must be considered as officers. They were doubtless subject to impeachment for malconduct in office, because they hold their office during good behaviour, which necessarily implies that a power of inquiry into their conduct was reserved to the authorities of the state. If we consider them as officers, the provisions of the constitution must bear on them. The first provision which must be considered relates to the term of office, and is contained in the 30th section of the Bill of Rights. It declares “ that no person shall be appointed or elected to office in this state, for life, or during good behaviour, but the tenure of all offices shall be for some limited timed’ This section may be considered as more properly relating to offices, thereafter to be appointed or elected, but it very clearly shows the spirit of the constitution to be in opposition to an unlimited tenure of office, and must have its due weight in the investigation of a constitutional question. The fourth section of the schedule shows conclusively, that the convention did not intend to permit any law which was repugnant to the constitution, to remain in force, and for that reason particular care was taken to perpetuate all laws' that were not repugnant, leaving no other conclusion, than that they intended to abolish all that were of a different character. The provisions of this law are manifestly in opposition to the spirit as well as the declared provisions in the constitution, and must be considered as void.
It is true the 3d section of the schedule provides that officers then in office should remain in until their successors should be qualified; but neither the convention nor the legislature contemplated the continuance of the board by making provisions to fill the offices of the members. We cannot, therefore, consider it, as the legislature may by possibility continue it, but must look at it *357 as it is, and contrast it with the constitution. The several amendments must be taken as part of the general law, and must altogether depend for their validity on the powers of the board, for the provisions of the law are nugatory without the essential officers, who alone are authorised to perform the duties required. A law containing the same provisions in regard to the particular officers necessary to the enforcement of it could not now be constitutionally passed by the legislature; and, by parity of reasoning, I do not think it can constitutionally exist in the face of the 4ih section of the schedule by having been in operation at the adoption of the constitution. The act charged in the indictment was, therefore, no violation of law, and the judgment must be reversed.